**IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ADRIANA JANDA | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| vs. | § | CAUSE NO. _____ |
| | § | |
| JUMP-START CHRISTIAN ACADEMY, | § | |
| INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | **JURY DEMANDED** |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

Adriana Janda ("Plaintiff"), files this complaining of and about Jump-Start Christian Academy, Inc., ("Defendant" or "JSCA"), and for causes of action would show the following:

### I.    PARTIES AND SERVICE

1. Plaintiff, Adriana Janda, is a citizen of the United States and the State of Texas and resides in Fort Bend County, Texas.

2. Defendant is a Christian Domestic School For-Profit Corporation.   It may be served with process by serving its registered agent, Diane B. Lancaster, at 6111 Arroyo Springs Lane, Fulshear, Texas 77441.

### II.    JURISDICTION AND VENUE

3. This suit arises under Sections 1981 of the Civil Rights Act of 1866 ("Section 1981"), as amended.

*Plaintiff's Original Complaint*                                                                                            1

4. This Court has subject matter jurisdiction pursuant to Civil Rights Act of 1866, as amended. 42 U.S.C. §§ 1981.

5. This Court also has supplemental jurisdiction over the Plaintiff's state law claims. 28 U.S.C. § 1367/

6. Venue is proper in the Southern District of Texas, Houston Division pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 626, because this is the judicial district in which all or a substantial part of the events or omissions giving rise to the claim occurred.

### III.    NATURE OF THE ACTION

7. This is an action brought pursuant to Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981, to correct and recover for Defendant's unlawful and discriminatory employment actions and practices that resulted in damages to Plaintiff.  Plaintiff is asserting race discrimination and retaliation under Section 1981. Plaintiff also brings forth common law claims for tortious interference. Plaintiff brings claims under Section 1981 within the four year statute of limitations to bring forth a claim.

### IV.    FACTUAL BACKGROUND

8. Plaintiff Adriana Janda (Hispanic) began her tenure with Jump-Start Christian Academy, Inc., ("JSCA") as a Teacher since January 19, 2021.

9. JSCA is a limited liability Domestic For-Profit Corporation that regularly conducts business in Fort Bend, Texas.

10. Ms. Janda worked directly under Ms. Diane Lancaster (hereinafter, "Ms. Lancaster") (Caucasian), the Owner and Director of JSCA.

11. Ms. Lancaster enticed Ms. Janda and promised her a pay raise after a 90 (ninety) day probation. After Ms. Janda reached the 90-day probation mark, Ms. Lancaster failed to uphold her

promise.

12. During the initial interview Ms. Lancaster instructed to Ms. Janda that her duties would include teaching, substitute and assisting other teachers in the Academy. Unfortunately, Ms. Lancaster would also force Ms. Janda to conduct cleaning duties and perform as JSCA's janitor. Ms. Janda's fellow similarly situated colleagues that were of Caucasian descent were not forced to perform janitorial duties.

13. Ms. Janda complied with Ms. Lancaster's demands in fear of losing her job, she continued her duties as instructed but would continue to express her concerns with the change in job duties. Ms. Lancaster would simply reply, "Hang in there. I promise changes are going to be made".

14. During Ms. Janda's first month at JSCA she started to experience discrimination from her fellow colleagues, specifically from Ms. Michelle Miranda Savoie (hereinafter, "Ms. Savoie") (Caucasian).

15. Ms. Janda filed a grievance with Ms. Lancaster regarding the discrimination she was experiencing from her colleagues. Ms. Lancaster pacified the allegations by addressing and labeling Ms. Savoie as a "bitch". She instructed Ms. Janda to disregard Ms. Savoie's actions.

16. In March of 2021, Ms. Janda was nominated Teacher of the Month by fellow staff members and parents. JSCA posted her poster in the front lobby for parents to see as they came in. However, when she came in for work the next morning, her poster was mysteriously missing.

17. Ms. Janda discovered the poster in the back dumpster behind the building. She asked Ms. Savoie and Ms. Rebecca Grey (hereinafter "Ms. Grey") (Caucasian) if they knew how the poster ended up in the dumpster and they both stated, "We have no clue" and "Get over it." Ms. Janda was informed by a co-worker that Ms. Savoie and Ms. Grey were laughing at her and thought her nomination was a joke.

18. Ms. Janda took her job very seriously and attended many courses to stay in compliance and become certified to teach at JSCA. Ms. Janda took courses such as a training course on Food Handling, which she completed on February 8, 2021; she also attended an Emergency Response for Childcare-CPR, Rescue Breathing and First Aid Modules courses and has a record of completion; she also attended Adult CPR, Child CPR, Infant CPR, Basic First Aid and Pediatric First Aid courses and received a certificate of completion; and attended and completed 'Providing High-Quality Experiences in Emergency Child Care Setting during COVID-19', 'Year 2 Decision-Making about When and How to Operate Child Care Programs during COVID-19', 'Year 2 Special Considerations for Infection Control During COVID-19 Year 2.' Ms. Janda was well deserving of the nomination.

19. Ms. Janda filed another grievance with Ms. Lancaster regarding the discrimination and the hostile work environment she was experiencing. Ms. Lancaster ultimately dismissed her complaint due to the reasoning that she was going to make changes and reassign the teachers as soon as she could. Ms. Janda accepted the reasoning and did not request further clarification. Ms. Janda feared she would lose her job if she pushed too hard.

20. Ms. Janda could not continue working at JSCA, she started to apply for new positions that were available within her area. All teaching positions required a job reference for consideration. Ms. Janda instructed Ms. Lancaster that she would need a reference from her for a position within Lamar CISD.

21. Ms. Lancaster confirmed she would abide and provide a good reference for her, she advised her that she was sad to let her go but that she understood that Ms. Janda was no longer happy within the school.

22. Ms. Janda reached out to Lamar CISD to obtain status of her filed application, she soon

discovered that she was not eligible for an interview and was told they would not consider her application nor grant an interview. Ms. Janda was confused and requested a reason as to why they would not consider her for the open position.

23. Ms. Janda was instructed from the secretary to request an open records request to determine the reason of the denial. She did as she was instructed, she received the report within a week of request.

24. Ms. Janda discovered that Ms. Lancaster had filled the reference with defamatory remarks and cited Ms. Janda as "non-rehirable" due to her poor work performance and gave her "poor" ratings. Ms. Janda became extremely upset and brought this to Ms. Lancaster for review, Ms. Lancaster denied all allegations until Ms. Janda produced the copies of the report.

25. Ms. Lancaster then stated that Ms. Gray was the personnel that filled out the job reference for Ms. Janda and that she would clarify any misunderstanding. Ms. Lancaster failed to retract the damage done.

26. Despite numerous Company policies prohibiting retaliation, the treatment that Janda has experienced has only increased since the filing of her complaint and grievance. Ultimately, Ms. Janda was constructively discharged on December 21, 2021.

27. After repeatedly raising concerns about the treatment that she was experiencing at JSCA, Ms. Janda finally reached her breaking point. The stress of working in this environment every day started to wear on her impacting both her health and family life. She firmly believed that the treatment that she was experiencing from her supervisor was intended to force her to quit. She filed a Charge of Discrimination with the EEOC/TWC-CRD detailing the hostile environment and harassment that she continued to experience at JSCA. During the investigation of the Charge, Plaintiff also reported the disparity of the disciplinary measures that she experienced as opposed

to her white colleagues facing similar allegations.

## V.     CAUSES OF ACTION

### 1.   DISCRIMINATION UNDER 42 U.S.C. § 1981

28. The Civil Rights Act of 1866 prohibits discrimination against any individual because of that individual's race.  *See* 42 U.S.C. § 1981.

29. Section 1981 guarantees the right of every person within the jurisdiction of the United States to "make, perform, modify, and terminate" contracts, including contracts of employment, regardless of that person's race. 42 U.S.C. § 1981(a)-(b), *Manley v. Invesco*, 555 Fed. Appx. 344, 347 (5th Cir. 2014).

30. Defendant engaged in discrimination against the Plaintiff, a Hispanic female, by interfering with her employment contract and duties by and through singling Plaintiff compared to non-Hispanic employees,  making misrepresentations to Plaintiff's prospective employers that she is a "poor worker" and "non-rehirable" and subsequently forcing her to constructively discharge from her employment.

31. Those instances of discrimination were based solely or predominantly on Plaintiff's race.

32. Moreover, Defendant clearly demonstrated its well-established custom of promoting animus against racial minorities, such as Plaintiff, by replacing Plaintiff with a Caucasian teacher and by not forcing its Caucasian employees to do the same tasks required by Plaintiff.

33. As a Hispanic, Plaintiff is a member of a protected class.  She was certainly qualified for her position. Plaintiff was treated differently, and less favorably than other similarly situated employees that were not of Hispanic descent, and she was replaced by a Caucasian teacher.  Thus, Plaintiff can easily establish a prima facie case of race discrimination.

34. The effect of these practices has been to deprive the Plaintiff of equal employment

opportunities and otherwise adversely affected her status as an employee.

35. Therefore, Plaintiff alleges that the Defendant discriminated against her by forcing her to constructively discharge from her employment based on her race in violation of Section 1981 of the Civil Rights Act of 1866.

36. Defendant acted with malice or, in the alternative, with reckless indifference to the protected rights of Plaintiff.

37. As a result of all of Defendant's violations of Plaintiff rights under federal law, Plaintiff has suffered and will continue to suffer severe mental anguish and emotional distress. Thus, Plaintiff is entitled to the reimbursement of wages, compensatory damages, reasonable attorneys' fees, costs, and disbursements incurred in her pursuit of this action.

## 2.   RETALIATION UNDER 42 U.S.C. § 1981

38. Plaintiff hereby incorporates by reference all of the forgoing allegations contained in the above-identified paragraphs as through fully set forth herein.

39. Pursuant to 42 U.S.C. § 1981, Plaintiff pleased a cause of action against Defendant for retaliation. Defendant intentionally retaliated against plaintiff because Plaintiff complained to Defendant about the race discrimination that Plaintiff experienced while being employed by Defendant.

40. Plaintiff engaged in protected activity by filing multiple grievances opposing unlawful treatment based on race.

41. After Plaintiff's protected complaints of the racially discriminatory actions by Defendant, Plaintiff was subjected to increased change in daily tasks/privileges, bias and unfavorable recommendations causing Plaintiff to constructively discharge, which was in violation of 42 U.S.C. § 1981. As a result of Defendant's retaliation, Plaintiff suffered damages (in an amount that

is within the jurisdictional limits of this Court).

### 3.  TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

42. The allegations contained in all paragraphs of the petition are hereby incorporated by reference with the same force and effect as if set forth verbatim.

43. Plaintiff asserts that there was a reasonable probability that it would have entered into a business relationship with a third person and/or existing employer, prospective employer, vendors, and business associates (i.e. Lamar CISD).

44. Defendant intentionally interfered with the relationship by misrepresenting Plaintiff as a "poor worker" and "non-rehirable" when Defendant knew Plaintiff was successful and received awards during her employment.

45. Plaintiff asserts that there is a high possibility that the prospect(s) would have developed into an actual business relationship but for Defendant's misrepresentations and tortious conduct. Plaintiff asserts that Dianne Lancaster acted with a conscious desire to prevent Plaintiff from gaining new employment; and she knew by misrepresenting Plaintiff as a "poor worker" or "non-rehirable" would certainly interfere with her chance for new employment.

46. Defendant's misrepresentations to Plaintiff's prospective employers were independently tortious or unlawful.  The interference proximately caused the Plaintiff's injury. The Plaintiff suffered actual damage or loss, including but not limited to, loss wages, loss of business opportunities, damage to professional reputation, and mental anguish.

### 4.  DEFMATION/SLANDER

47. The allegations contained in all paragraphs of the petition are hereby incorporated by reference with the same force and effect as if set forth verbatim.

48. Defendant negligently or maliciously released false, defamatory statements of fact about

Plaintiff, a private individual.

49. Dianne Lancaster, on behalf of Defendant, made direct comments to Plaintiff's prospective employers that Plaintiff was a "poor worker" and "non-rehirable," yet at the same time gave Plaintiff high praises and awards for her performance.

50. Defendant published false information about Plaintiff and her employment with Defendant. The information further defamed Plaintiff by publishing the information to Plaintiff's prospective employers with the requisite knowledge that the information would cause Plaintiff harm.

51. Plaintiff has suffered substantial injury as a direct result of Defendant's defamatory statements, including but not limited to injury to her profession, character, and reputation, mental anguish, loss of past and future income, and loss of earning capacity.

52. Further, these statements made by Defendant, including through their agents, will undoubtedly have a lasting impact on Plaintiff's reputation and ability to secure employment.

## VI.    JURY DEMAND

53. As Plaintiff demands a jury trial on all issues to be tried in this matter. Plaintiff has submitted the jury demand and the jury fee with her Original Complaint.

## VII.    PRAYER

54.    WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant to be cited to appear and answer, and that on final hearing of this cause Plaintiff have the following relief:

   a. Judgment against Defendant, for actual damages sustained by Plaintiff as alleged herein;

   b. Judgment against Defendant, for backpay lost by Plaintiff as alleged herein;

   c. Judgment against Defendant, for front pay by Plaintiff as alleged herein;

d. Grant Plaintiff general damages for the damage to Plaintiff's reputation;

e. Grant Plaintiff consequential damages;

f. Pre- and post-judgment at the highest legal interest rate;

g. Punitive damages;

h. Damages for mental pain and mental anguish;

i. Exemplary damages;

j. All costs of court expended herein; and

k. Such other and further relief, at law or in equity, general or special to which Plaintiff may show Plaintiff justly entitled.

Respectfully Submitted,

 Kennard Law P.C.

Eddie Hodges, Jr.
Texas Bar No. 24116523
Southern District No. 3479748
Eddie.Hodges@kennardlaw.com

Alfonso Kennard, Jr.
Texas Bar No.: 24036888
Southern District No: 713316
Alfonso.Kennard@kennardlaw.com
5120 Woodway Dr., Suite 10010
Houston Texas 77056
Main: (713) 742-0900
Fax: (832) 558-9412
**ATTORNEYS FOR PLAINTIFF**